| CARLA SIMS, ON BEHALF OF HER MINOR SON JAHMON WILLIAMS | * | NO. 2024-CA-0277 |
|---|---|---|
| | * | |
| | | COURT OF APPEAL |
| VERSUS | * | |
| | | FOURTH CIRCUIT |
| SAMUEL J. GREEN CHARTER SCHOOL FIELD, FIRST LINE SCHOOLS NETWORK, INC., ALTERNATIVE SERVICE CONCEPTS NEW ORLEANS RECOVERY SCHOOL DISTRICT AND XYZ INSURANCE COMPANY | * | STATE OF LOUISIANA |
| | * * * * * * * | |

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2018-03094, DIVISION "D"
Honorable Monique E. Barial, Judge
* * * * * *
**Judge Paula A. Brown**
* * * * * *

(Court composed of Judge Paula A. Brown, Judge Tiffany Gautier Chase, Judge Nakisha Ervin-Knott)

Daryl A. Gray
Eric A. Wright
James "Jimmy" Harris
Allison J. Johnson
WRIGHT GRAY HARRIS
201 St. Charles Avenue, Suite 2710
New Orleans, LA 70170

     COUNSEL FOR PLAINTIFF/APPELLANT

Morgan A. Druhan
Tara E. Clement
GIEGER LABORDE & LAPEROUSE, LLC
701 Poydras Street, Suite 4800
New Orleans, LA 70139

     COUNSEL FOR DEFENDANT/APPELLEE

                       **AFFIRMED**
               **DECEMBER 2, 2024**

This is a civil appeal. Appellant, Carla Sims ("Ms. Sims"), on behalf of her minor son Jahmon Williams, seeks to appeal the district court's February 7, 2024 judgment, which granted the *Motion for Summary Judgment* filed by Appellee, FirstLine Schools, Inc. ("FirstLine"), and dismissed Ms. Sims' claims against FirstLine with prejudice. For the reasons that follow, we affirm the district court's judgment.

## FACTS AND PROCEDURAL HISTORY

On March 31, 2017, Jahmon Williams ("Jahmon") was playing on Samuel J. Green Charter School's ("Sam Green")[1] football field when he tripped over another student's foot and fell to the ground, sustaining shoulder injuries. At the time of the accident, Jahmon and a few other students had remained at the school while all other children went on a field trip. Coach Jacques Richardson ("Coach Richardson") supervised the students who remained at the school. On March 28,

---

[1] We will refer to the school throughout this opinion as Sam Green. We note for clarity, however, that Sam Green as a litigant was dismissed from this suit because Sam Green is not a juridical entity. Sam Green is owned by the Recovery School District and operated by FirstLine.

1

2018, Ms. Sims filed a *Petition for Damages* against FirstLine, and several other defendants,[2] alleging, *inter alia*, that defendant failed to maintain reasonably safe conditions on its property and failed to properly supervise and train its staff to monitor students playing on the football field. Over five years later, on April 20, 2023, Ms. Sims filed a motion to set trial on the merits, certifying that discovery was complete.

On May 3, 2023, Counsel for Ms. Sims requested to depose the corporate representative of FirstLine. That same day, FirstLine filed a motion for summary judgment, arguing that Ms. Sims was unable to prove the elements of the negligent supervision claim and that her claims against it should be dismissed with prejudice. The motion for summary judgment was originally set for hearing on June 16, 2023, but after a consent motion to continue entered on May 30, 2023, the motion was reset for hearing on August 18, 2023, in order to allow for the corporate deposition of FirstLine to take place.[3] Following the corporate deposition, on November 7, 2023, Counsel for Ms. Sims issued a subpoena duces tecum to Alternative Service Concepts ("ASC"), a third-party administrator for FirstLine, requesting that it produce the following:

> Any and all records, documents, recordings, diagrams, electronically stored information, communications and information regarding claims from the date of loss of March 31, 2017, involving Samuel J. Green Charter School/Firstline Schools Network, INC. obtained by, possessed by, and/or granted to [S]amuel J. Green Charter

---

[2] Other named defendants include: Samuel J. Green Charter School, New Orleans Recovery School District, Alternative Services Concept, and an unknown insurer for Firstline and Sam Green. This appeal is solely related to FirstLine.

[3] The record suggests that the hearing on August 18, 2023 did not go forward. There were no formal motions to continue filed by either party.

School/Firstline Schools Network, INC. and/or Alternative Service Concept.

In response to this subpoena, on November 20, 2023, FirstLine filed a motion to reset the hearing on the motion for summary judgment, which was subsequently reset to January 26, 2024. In further response to the subpoena, FirstLine filed a *Motion to Quash Subpoena Duces Tecum and Motion for Protective Order* ("motion to quash"), wherein it argued that the requested information was work product and protected by attorney-client privilege.

The motion for summary judgment and motion to quash came for hearing on January 26, 2024. As a preliminary matter, the district court first heard arguments on the motion to quash. Afterwards, the district court denied the motion to quash, but ordered that FirstLine prepare a privilege log and submit the log and records to the Court for an *in camera* inspection. Following this ruling, and without objection from either side, the parties proceeded with their arguments on FirstLine's motion for summary judgment. The district court granted the motion for summary judgment in open court, but later reduced its ruling on the motion for summary judgment to writing on February 7, 2024, and its ruling on the motion to quash on March 11, 2024. In its written reasons for judgment, issued on March 18, 2024, the district court reasoned that an injury occurring during a game of flag football—an ordinary, school-sanctioned activity—could not have been prevented by Coach Richardson exercising any further supervision than what he provided on the day of the accident. This appeal followed.

## STANDARD OF REVIEW

"Appellate courts review the [district] court's denial or grant of a motion for summary judgment *de novo*." *Majoue v. Fish*, 23-0549, p. 4 (La. App. 4 Cir.

3/8/24), 385 So.3d 321, 324 (citing *Reddick v. State*, 21-0197, p. 5 (La. App. 4 Cir. 9/29/21), 328 So.3d 504, 507). On appeal, courts apply the same burden of proof established by La. C.C.P. art. 966(A)(3), "which provides that, 'a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law.'" *Eckstein v. Stratus Sys., Inc.*, 23-0554, p. 4 (La. App. 4 Cir. 2/26/24), 384 So.3d 1049, 1051 (quoting La. C.C.P. art. 966(A)(3)). Generally, the burden of proof on a motion for summary judgment rests with the mover. La. C.C.P. art. 966(D)(1). However, "if the mover will not bear the burden of proof at trial, the mover must only point out the absence of factual support for one or more elements essential to the adverse party's claim." *Pers. Touch Prop. Grp., LLC v. Jones*, 24-0023, p. 2 (La. App. 4 Cir. 4/4/24), 390 So.3d 297, 299 (quoting *PCOF Props., L.L.C. v. Joseph*, 21-0341, p. 3 (La. App. 4 Cir. 12/1/21), 332 So.3d 220, 222).

## DISCUSSION

Ms. Sims raises two assignments of error, which we summarize as follows: (1) the district court erred by granting summary judgment in favor of FirstLine because FirstLine failed to meet its required burden of proof that there was no factual support for one or more elements essential to Ms. Sims' claim; and (2) the district court erred in ruling on FirstLine's motion for summary judgment prior to conducting an *in camera* inspection of documents subpoenaed by Ms. Sims. For ease of reading, we will first discuss the procedural issue raised in assignment of error number two.

***Procedural Error***

4

In this assigned error, Ms. Sims asserts that the district court abused its discretion when it granted FirstLine's motion for summary judgment before conducting an *in camera* inspection of the documents that she subpoenaed from FirstLine. Ms. Sims posits that the district court must have concluded that those documents may have contained information critical to Ms. Sims' case when she ordered the *in camera* inspection. Thus, Ms. Sims complains that it was a procedural error for the district court to proceed with the hearing and subsequently grant the motion for summary judgment without first reviewing the documents. Conversely, FirstLine notes that there was no objection lodged with the district court hearing the motion for summary judgment after it ordered an *in camera* inspection. As such, FirstLine contends that Ms. Sims waived her objection, making this argument inappropriate on appeal.

"It is well settled that appellate courts will not consider issues raised for the first time, which are not pleaded in the court below and which the district court has not addressed." *Hardy v. Juvenile Justice Intervention Ctr.*, 21-0715, p. 5 (La. App. 4 Cir. 6/15/22), 342 So.3d 1076, 1080 (citation omitted). Thus, any "[i]ssues raised for the first time on appeal are not properly before an appellate court." *Quinn v. Palmer*, 23-0181, p. 16 (La. App. 4 Cir. 2/5/24), 385 So.3d 249, 260 (citing *Hardy*, 21-0715, p. 5, 342 So.3d at 1080). *See also McMaster v. Progressive Sec. Ins. Co.*, 14-0155, p. 6 (La. App. 4 Cir. 10/29/14), 152 So.3d 979, 983 (holding that "[a]n appellant cannot advance an argument on appeal that is not raised or objected to at trial.").

Turning to the case *sub judice*, the record reveals that the district court first heard oral arguments on the motion to quash. At the conclusion of each party's argument, the district court stated:

Motion to Quash is denied.  What I am going to order is that they prepare a privilege log and submit that along with the record to the Court for an *in camera* inspection.

Anything else?  Not on that?

Let's get to the Summary Judgment.

There were no objections lodged during the arguments on the motion to quash, nor was there an objection raised to the statement by the district court judge.  Moving on, the district court heard the arguments on the motion for summary judgment.  Counsel for Ms. Sims again made no objections, discovery-related or otherwise, throughout the duration of the motion for summary judgment portion of the hearing.  Because there were no objections lodged in the district court to the district court hearing FirstLine's motion for summary judgment after ordering an *in camera* inspection, Ms. Sims cannot, for the first time, advance this argument on appeal.  This assignment of error is not persuasive.

### *Motion for Summary Judgment*

FirstLine filed a motion for summary judgment in the district court, arguing that Ms. Sims is unable to prove one or more elements essential to her claim for negligent supervision.  In support of its motion, FirstLine relied on the deposition testimony of both Jahmon and Coach Richardson.  The pertinent testimony of each is set forth below.

### *Jahmon*

According to Jahmon, on the day of his accident, he and "three other students"—who were held back from attending a school field trip due to their behavior—were playing two-hand touch football on the football field.  Jahmon could not, however, recall what specific behavior had prohibited him from attending the field trip. In regards to the accident, Jahmon recounted that he was

6

running with the football down the field when one of the other students "stuck his foot out" and "clipped him," causing him to trip and fall. Jahmon explained that he and the student that tripped him had played football together before and had never had any prior disagreements or fights. At the time of his fall, Coach Richardson was not on the football field.

*Coach Richardson*

Coach Richardson testified that in accordance with Sam Green's general supervision guidelines, teachers are to "always keep [their] eyes open and make sure [the students are] safe and sound." In his opinion, this close monitoring requires him to "keep [his] head on a swivel." Coach Richardson recalled that on the day of the accident most of the other students had gone on a field trip. He supervised the remaining students—"probably seven or eight"—who were not allowed to go on the field trip, and those students were allowed to play flag football outside on the football field. At the time of Jahmon's fall, Coach Richardson was sitting on the bleachers outside of the football field. Coach Richardson explained:

> There's some kids on the field. There's a couple kids standing by me, or sitting by me, and we're just talking and everybody's playing. They'll come, they'll play, they'll come stop and talk to me, they'll go back and play, they'll come stand and get water, they'll go back and just watch.

Because the students were in constant motion, Coach Richardson said that he was "just trying to stay vigilant." While he did not witness Jahmon's accident, he became aware when another student helped Jahmon walk over to where he was seated. After inspecting Jahmon's arm and hearing from Jahmon that he was in pain, Coach Richardson instructed the other student to walk Jahmon to the nurse's office because he had "to stay outside, supervising the kids." Counsel for Ms.

7

Sims then inquired as to any subsequent incidents that may have occurred at Sam Green under Coach Richardson's supervision, which yielded the following exchange:

> COACH: Kids get injured all the time at PE. All the time. I could be watching, and the kid gets injured.
>
> COUNSEL: Right.
>
> COACH: But it's all part of PE, you know? That's where the injuries [are] going to happen, but it's not—it's rare.
>
> COUNSEL: Right.
>
> COACH: It's not all the time. In a year, we might have two kids really injured, like a broken arm or something like that. You know, fall off a playground thing, fall off the monkey bars, or stuff like that. So, we do have injuries. Yes, we do.

On appeal, Ms. Sims argues that FirstLine failed to meet its required burden of proof on summary judgment to point out the absence of factual support for one or more elements essential to her claim. Specifically, Ms. Sims asserts that the following issues remain in dispute: (1) Coach Richardson's whereabouts at the time of the accident and how that may have impacted his supervising abilities; (2) how many children were under Coach Richardson's supervision at the time of the accident; and (3) whether the children present on the day of the accident had been withheld from the field trip due to disciplinary issues, thus triggering a heightened level of necessary supervision.

Louisiana Civil Code article 2320 provides, in pertinent part, that "[m]asters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed." The same article goes on to say that "responsibility only attaches, when the masters or employers, teachers and artisans, might have prevented the act which caused the

damage, and have not done it." Further, "a school and its teachers are [generally] liable for 'damages caused by students under their supervision when the school board, the teacher, or other authorities might have prevented the act which caused the damages and have not done so.'" *Dean v. De La Salle of New Orleans, Inc.*, 21-0388, p. 6 (La. App. 4 Cir. 12/21/21), 334 So.3d 425, 429 (quoting *Wallmuth v. Rapides Par. Sch. Bd.*, 01-1779, p. 13 (La. 4/3/02), 813 So.2d 341, 349). In order to establish a claim for negligent supervision of students, a party must prove:

> (1) negligence on the part of the School Board, its agents, or teachers in providing supervision; (2) a causal connection between the lack of supervision and the accident; and (3) the risk of unreasonable injury was foreseeable, constructively or actually known, and preventable if a requisite degree of supervision had been exercised.

*Robinson v. St. John the Baptist Par. Sch. Bd.*, 18-510, p. 9 (La. App. 5 Cir. 4/17/19), 270 So.3d 838, 844 (quoting *Carter ex rel. Carter v. East St. John Elementary Sch.*, 12-174, p. 5 (La. App. 5 Cir. 11/13/12), 105 So.3d 856, 859).

Ms. Sims, as the party pursuing a claim of negligent supervision, bears the burden of proof at trial in this matter. Thus, in order to succeed on its motion, FirstLine—as the mover for summary judgment—bears the burden of showing the absence of factual support for only one essential element to Ms. Sims' claim. Ms. Sims asserts that FirstLine failed to do so. In determining whether FirstLine met its burden on the motion for summary judgment, we must first examine each element of negligent supervision. Because elements two and three—causal connection and foreseeability—of a negligent supervision claim are so intertwined, we will address them together.

*Negligent Supervision on the Part of the School Board, its Agents, or Teachers*

In its motion for summary judgment, FirstLine argued that Coach Richardson's supervision on the day of the accident was appropriate and

9

reasonable based on the amount of students he was supervising. FirstLine posited that Coach Richardson stayed vigilant in his attempts to keep an eye on the students spread out across the bleachers and the football field. In her opposition, Ms. Sims argued that: (1) Coach Richardson left the students unattended on the football field while he sat in the bleachers; and (2) even if he were in the bleachers, which were only twenty-five yards away, he should have noticed that Jahmon was injured had he been exercising reasonable supervision.

At the hearing, however, FirstLine conceded its argument on element one, negligent supervision. Specifically, Counsel for FirstLine stated:

> Element one, I guess we could, if we were first just going to go ahead and let's say there's an issue of fact there. Coach Richardson says that he was out there, that he was watching the students, that there were about seven to eight that were playing. Jahmon claims there were only three to four out on the football field, and that he didn't see the accident happening directly.
>
> If we just give them element one, let's focus on element two and element three, which is what they have no evidence to support.

Based on FirstLine's concession, we find that there are genuine issues of material fact as to whether FirstLine and its teacher were negligent in providing supervision.

*Causal Connection and Foreseeability*

As to the causal connection element, Ms. Sims argues on appeal that Jahmon's injuries were directly caused by Coach Richardson's negligent supervision, his failure to implement preventative measures, and his failure to render remedial aid. In support of that argument, Ms. Sims asserts that both Jahmon and Coach Richardson's testimony provided that all of the children who did not attend the field trip had been excluded on account of disciplinary issues and that those issues established a heightened burden of attentiveness as to these

10

students. Ms. Sims further asserts that Coach Richardson's failure to notice Jahmon's injury until after it had occurred, coupled with his inability to provide immediate assistance, established the causal connection necessary for this element. Regarding the foreseeability element, Ms. Sims again relies on behavioral issues as the reason why the group of students were excluded from the field trip on the day of the accident. Therefore, she concludes that a lack of supervision and instruction on safety procedures, coupled with children with "a history of bad behavior," created a level of foreseeability that an injury would result from this set of circumstances. We disagree.

Louisiana courts have addressed the issue of school-related injuries and the subsequent negligent supervision claims that follow. In considering this jurisprudence, we must begin by addressing Ms. Sims' misplaced reliance on *Robinson* in support of the argument that Coach Richardson's supervision was both causally connected to the occurrence of the accident and that the accident was foreseeable and preventable. In *Robinson*, the plaintiff—a kindergarten student—injured her arm after being pushed by a classmate from a slide platform located in the school's playground area. 18-510, p. 1, 270 So.3d at 839. It was established through testimony that at least six students, including plaintiff, had gathered on the slide platform and that another student pushed plaintiff after telling her to "hurry up and go down the slide." *Id.* at p. 12, 270 So.3d at 846. The testimony further established that the "only known teacher responsible for monitoring students during recess, was attending to her phone." *Id.* It was this specific distraction that led the court to find that, had the teacher not been on her phone, she could have prevented the gathering of the students at the top of the slide, which subsequently may have prevented plaintiff's injury, thus satisfying the "causal connection"

element. As to foreseeability, the court noted that this was not a matter of spontaneous actions. Instead, this was a matter wherein the duty teacher—distracted by her phone—missed "the crowd of kindergarten students gathered at the top of a six foot high piece of playground equipment and the opportunity to redirect students to other activities as to prevent the possibility of injury." *Id.* at p. 13, 270 So.3d at 846. Because evidence was presented to establish that the teacher's use of her phone was causally connected to the occurrence of the accident and that the accident was not only foreseeable, but also preventable had the teacher not been on her phone, the court found that the plaintiff's burden had been met as to negligent supervision.

The instant matter is readily distinguishable from *Robinson*. Beginning with the causal connection element, Jahmon's injury resulted from him tripping over the foot of another student. This type of spontaneous action is wholly different from a handful of kindergarten students having enough time to not only gather at the top of a slide, but also for plaintiff to have been pushed. In *Robinson*, had the teacher been looking at the students rather than at her phone, she would have seen the children gathering and would likely have been able to issue a warning prior to plaintiff being pushed. Even if Coach Richardson had been staring directly at Jahmon and the other students, he would not have been able to stop Jahmon from tripping. This is the nature of spontaneous schoolyard accidents. *See Wallmuth*, 01-1779, p. 13, 813 So.2d at 349-50 (holding that the School Board was not liable for spontaneous actions because the risk of said actions were not "constructively or actually known"); *See also Nash v. Rapides Par. Sch. Bd.*, 188 So.2d 508, 510 (La. App. 3d Cir. 1966) (holding that accidents "involving school children at play, happen so quickly that unless there was direct supervision of every child […], the

accident can be said to be almost impossible to prevent"). Based on the evidence presented, we find that there is a lack of factual support that Jahmon's injury was causally related to Coach Richardson's negligent supervision.

Because we conclude that the tripping was spontaneous, it follows that it was also not foreseeable. Jahmon established through his testimony that the students were playing football as they had done many times in the past, and none of the students had any issues with each other. Moreover, while Jahmon was restricted from attending the field trip due to disciplinary issues, the record is devoid of any evidence that the other students had behavioral dispositions, which would have triggered a heightened level of supervision by Coach Richardson. This was simply an unfortunate schoolyard accident—Jahmon was running with the football when he tripped over the foot of another student. This assignment of error is unpersuasive.

For the foregoing reasons, Ms. Sims failed to prove that there exists a genuine issue of material fact as to the second and third elements of her negligent supervision claim. As such, we find that FirstLine was entitled to summary judgment.

## DECREE

For the aforementioned reasons, we affirm the district court's February 7, 2024 judgment.

**AFFIRMED**